QUINCY M. NELSON, Appellant, v. HENRY TROLL, Public Administrator, Respondent.

St. Louis Court of Appeals, April 8, 1913.

1. EXECUTORS AND ADMINISTRATORS: Statutory Allowance to Widower. Under Sec. 120, R. S. 1909, providing that if a wife shall die owning personal property, her widower, in addition to curtesy, shall be entitled to keep, as his absolute property, all the articles provided for a widow in her deceased husband's property by sections 114, 115, 116 and 118, a widower is entitled to take absolutely, regardless of whether there was issue of the marriage.

2. ——: ——. Under Sec. 120, R. S. 1909, giving a surviving husband the same allowance in the personal property of his

deceased wife as is given to a widow in the property of her deceased husband by sections 114 and 115 (which provide that the widow shall be allowed to keep as her absolute property family books not exceeding $200, all wearing apparel, her wheels, looms, and other implements of industry, all grain and other provisions necessary for her subsistence for twelve months, and her household furniture, not to exceed the value of $500, and that, if the provisions allowed shall not be on hand, the court shall make reasonable appropriation to supply such deficiency), a surviving husband was entitled, where his wife owned household furniture, to an absolute allowance of $500, or to that allowance out of the proceeds, the same having been sold, and to an allowance for provisions necessary for twelve months' subsistence, those not being on hand, but was not entitled to the articles specifically mentioned, such as wearing apparel, books, etc., where the deceased wife was not shown to have had such property on hand at the time of her death.

3. **APPELLATE PRACTICE: Conclusiveness of Finding: Executors and Administrators.** A finding of the trial court as to a reasonable sum for provisions for the widower for a year allowed by Secs. 115 and 120, R. S. 1909, is not open to review on appeal.

4. **EXECUTORS AND ADMINISTRATORS: Statutory Allowance to Widower.** In view of Sec. 118, R. S. 1909, providing that if the widow do not receive the property allowed her, and the same be sold, the court shall order the money to be paid to her, a widower, who, by virtue of Sec. 120, is entitled to the same rights in the personalty of his deceased wife as a widow is in that of a deceased husband, may, under section 116, providing that the widow may take such personal property as she may choose, not to exceed the appraised value of $400, have an allowance of $400 out of the proceeds of the sale of the wife's personalty, where they, in fact, exceed the amount of that and other absolute allowances, even though the appraised value of the property was less than the amount of the several allowances.

5. **CIRCUIT COURTS: Appeal from Probate Court: Jurisdiction on Appeal.** The power of a circuit court to hear and determine matters arising in a case appealed from a probate court is purely derivative.

6. **EXECUTORS AND ADMINISTRATORS: Pleading: Counterclaim.** Under Secs. 198, 199, 200, R. S. 1909, a probate court has jurisdiction to entertain a counterclaim interposed by an administrator, in all cases where counterclaims are authorized by law.

7. ——: ——: ——: **Subject-Matter of Counterclaim.** Where a widower claims personal property of, and an allowance from, the estate of his deceased wife, by virtue of Sec. 120, R. S. 1909, damages arising from the widower's unauthorized withholding and use, before the administrator took possession, of property other than that which passed to him by virtue of said section, is a proper subject of counterclaim on the part of the administrator; such claim being "connected with the subject of the action," within Sec. 1807, R. S. 1909.

8. **PLEADING: Counterclaims: Statutory Construction.** The courts are prone to construe liberally Sec. 1807, R. S. 1909, relating to counterclaims, in order to effectuate its obvious extent and purpose and permit of the adjustment in the same action of claims that appear to be within its provisions and may be intelligently settled in one proceeding.

9. **EXECUTORS AND ADMINISTRATORS: Use of Property by Widower: Right of Recovery by Administrator.** Where a widower claims personal property of, and an allowance from, the estate of his deceased wife, by virtue of Sec. 120, R. S. 1909, the administrator is not entitled to recover under a counterclaim for the withholding and use by the widower of such property as is absolutely allowed him by statute, since the rights pertaining thereto pass to him in the first instance and not to the estate; but whether a recovery could be had for the withholding and use of other property, *quaere*.

10. **JUDGMENTS: Conclusiveness: Probate Courts.** Although probate courts are courts of inferior and limited jurisdiction, their judgments upon matters within their jurisdiction are entitled to the same weight as those of any other court of record, and are conclusive in all collateral proceedings.

11. **EXECUTORS AND ADMINISTRATORS: Order of No Administration: Right of Public Administrator to Administer.** An order of a probate court that letters of administration should not issue upon the estate of a deceased wife gives the widower the right of possession of the personal property of the estate, under Sec. 10, R. S. 1909, and, until such order is revoked by the probate court, the public administrator can obtain no right to the possession of such property, nor for the recovery of compensation for the use thereof, although he claims the right to take charge under Sec. 302 and files the notice provided for by Sec. 305.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm*, Judge.

REVERSED AND REMANDED (*with directions*).

*Charles P. Comer* for appellant.

(1) The finding and judgment of the circuit court is against the evidence, the weight of the evidence and the law under the evidence. 29 Cyc. 820; 29 Cyc. 832; Lawson v. Mills, 130 Mo. 170; Choquette v. Railroad, 152 Mo. 257; Roberts v. Tel. Co., 166 Mo. 370. (2) The judgment for the defendant on the counterclaim is not responsive to the issues made by the pleadings. 23 Cyc. 816; McLaughlin v. McLaughlin, 16 Mo. 202; Kyle v. Hoyle, 6 Mo. 526; Smith v. St. Louis Tfr. Co., 92 Mo. App. 41; 23 Cyc. 820 (g); 23 Cyc. 833 (c). (3) Defendant's counterclaim does not state facts sufficient to constitute a cause of action against this plaintiff. 39 Cyc. 853-4; Young v. Rees, 145 Mo. 261; State v. Dickmann, 146 Mo. App. 396; Bank v. Aull, 80 Mo. 199; Edmonson v. Kite, 43 Mo. 176; Cohen v. Kyler, 27 Mo. 122; Hood v. Mathis, 21 Mo. 308; Haumiller v. Ackerman, 150 Mo. App. 141; Starbuck v. Avery, 132 Mo. App. 542. (4) The sum awarded the widower as his allowance under the statute was inadequate and insufficient. Secs. 105-111, R. S. 1899; Secs. 114-120, R. S. 1909. (5) The probate court had no jurisdiction of the subject-matter of the counterclaim, therefore, the circuit court had none on appeal. Secs. 64-66, 120, 198, R. S. 1909; Eans v. Eans, 79 Mo. 53; Cummings v. Cummings, 51 Mo. 261; Garver v. Richardson, 77 Mo. App. 463; 1 Woerner's Amn. Law of Admn. (2 Ed.), pp. 171-173; Bryant v. McCune, 49 Mo. 547; Hasenritter v. Hasenritter, 77 Mo. 162; Secs. 64, 66, 114, 115, 116, 120, R. S. 1909.

*E. P. Peers* for respondent.

There is no question that respondent's counterclaim arose out of and was directly connected with the cause of action and was connected with the subject of

the action; therefore it was properly allowed. Bow-man v. Lickey, 86 Mo. App. 47; Miller v. Crigler, 83 Mo. App. 395; Mitchell v. Martin, 63 Mo. App. 560; Bealy v. Smith, 158 Mo. 515; In re Estate of Jarbor, 227 Mo. 59.

NORTONI, J.—This is a claim on the part of the plaintiff widower for the statutory allowance and his absolute property in the estate of his deceased wife. Defendant is the public administrator in charge of the estate, and the proceeding originated in the probate court, from whence it found its way, by appeal, into the circuit court. Besides denying *in toto* plaintiff's right, defendant administrator filed a counterclaim in the probate court, by which he seeks to recover from plaintiff for withholding the property of the estate and using it in a boarding house after the death of the intestate wife and until the administrator came into possession. On a trial in the circuit court, without a jury, the court recognized and enforced plaintiff's statutory rights in part, but found for defendant and awarded a recovery on the counterclaim too, and from this judgment plaintiff prosecutes the appeal.

The principal questions for consideration are two in number and relate, first, to the identity of the right of the widower to have and enjoy the allowance and absolute property from his deceased wife's estate that she would enjoy in his estate as his widow, and then, too, as subsidiary to this, the amount to be allowed in money in lieu of the specific articles of property allowed the widow by statute, when such property has been sold by the administrator; and, second, as to the right of the administrator to recover through counterclaim from the plaintiff widower as for the use of the property of the estate, household furniture, etc., in a boarding house after the death of the wife and until it came into the possession of the administrator, when

it appears the property was retained by the widower under an order of the probate court authorizing its retention for the reason the estate was adjudged not sufficient in value to justify an administration.

The relevant facts are, plaintiff's wife, Georgia Nelson, and he together maintained a boarding and rooming house in the city of St. Louis where they resided; but it appears that all the furnishings therein belonged to plaintiff's wife. This boarding and rooming house business occupied four separate residence buildings on Vernon avenue under the same management—that is, of plaintiff's wife and himself. Mrs. Nelson died on September 30, 1909, and it appears that her estate consisted solely of the furnishings in the four adjacent residences wherein the boarding and rooming house business was conducted. The entire estate, after being inventoried by the public administrator, was appraised at $770.45 but was afterwards sold by the administrator for $1350, and so it is plaintiff's claim now relates to his rights in this money realized by the administrator on the sale of the property.

On the 29th day of October, 1909, after the death of his wife, on September 30, plaintiff applied to the probate court, under section 10, Revised Statutes 1909, for an order to the effect that no administration should be had upon his wife's estate, for the reason that the estate was not greater in amount than is allowed by law as the absolute property of the widower, and the probate court, upon hearing the evidence, sustained his application and entered the order accordingly. Thereafter, plaintiff continued in possession of the property and conducted the boarding and rooming house as before for several months, until defendant public administrator took charge of the estate and proceeded to administer it. The precise date on which the public administrator interposed does not appear, but it does appear that he inventoried the entire estate

on January 20, 1910, as a claim existing against this plaintiff for goods and chattels which was appraised at the value of twenty-five dollars. Afterwards, on April 8, 1910, the administrator made a supplemental inventory containing all of the items of the estate, which consists entirely of household and kitchen furniture, beds, bedding, etc., of the same character of goods, all of which were appraised, as before stated, at $770.45.

Plaintiff continued in possession of the property under the order of the probate court dispensing with administration for some time, and, at any rate, until about the time the administrator made and filed his inventory in April, 1910—that is, from the date of the death of his wife, September 30, 1909, to the early part of April, 1910, or a little more than six months. After the administrator came into possession of the property, he sold it all for $1350, and plaintiff filed his claim for his allowance and his absolute property in his wife's estate under the statute. By a stipulation on file and in the record, it is agreed between the parties "That whatever rights Quincy M. Nelson may have under and by virtue of the statutes of the State of Missouri as the husband of the said Georgia Nelson, deceased, to and in the estate and property of the said Georgia Nelson, prior to the said sale by the public administrator hereinbefore mentioned, shall attach to the proceeds of the said sale, and the said proceeds to stand in the lieu and stead of said property and apportioned accordingly. The administrator expressly denies that the said Quincy M. Nelson has any interest in the property above set out."

On these facts, the circuit court sustained plaintiff's claim both for an allowance and for his absolute property as follows: Under section 114, Revised Statutes 1909, which allows the widow to keep certain enumerated articles such as household, kitchen furniture, wearing apparel, provisions, etc., the court

awarded plaintiff $100. It appearing in the case that there were no grain, meat, vegetables, groceries and other provisions on hand at the time of the death of Mrs. Nelson, the court allowed plaintiff as a reasonable appropriation out of the assets of the estate, to supply such deficiency, in accordance with section 115, Revised Statutes 1909, $100 for his one year's support. Under section 116, Revised Statutes 1909, the court allowed plaintiff $400, in addition to the above, on his right to take such personal property as he might choose, not to exceed the appraised value of $400. Thus it appears the court awarded to plaintiff a total allowance of $600 under the three sections of the statute above noted. At the same time, the court found for defendant on the counterclaim, while the estate was held by him, it is said in the judgment, "*de son tort*," in the sum of $400, and ordered that such amount should be set off against the allowance aforesaid, leaving a residue due plaintiff to the amount of $200 on account of his absolute property and household furniture, beds, bedding, etc., and in lieu of provisions.

There can be no doubt that error inheres in this judgment in several respects. The relevant statutes will be set out and noticed in their order; but, first, we will consider that which confers the same rights on the plaintiff widower in the estate of the deceased wife as are enjoyed by the widow in the husband's estate in event of his prior death. Section 120, Revised Statutes 1909, is as follows:

"If a wife shall die, testate or intestate, owning personal property in her own name, in addition to curtesy, her widower shall be allowed to keep as his absolute property all the articles and property, and be entitled to all the remedies and reliefs as relates to the deceased wife's property, as is now provided for the widow in the deceased husband's property, under and by virtue of sections 114, 115, 116 and 118."

From this statute it is entirely clear that the Legislature intended the widower should enjoy the same rights as to the statutory allowance pertaining to the property enumerated in section 114, and to a reasonable allowance under section 115 to supply a deficiency for provisions, in event there are none on hand, and the absolute right to additional property not to exceed the appraised value of $400 under section 116. Furthermore, that, in event the property so impressed by these rights of the widow is sold by the administrator, the widower shall enjoy the same rights as the widow, to have the claims for the statutory allowances and absolute property satisfied before the money therefrom shall be paid out for debts or distributed as is provided in section 118, Revised Statutes 1909. Though the section of the statute above copied (section 120) purports to confer these rights on the husband "in addition to curtesy," it has been pointedly determined by our Supreme Court that the word "curtesy" is to be regarded as without influence on the question whatever and the statute construed to obtain alike even in those cases where there was no child born alive of the marriage and the husband is for that reason without the right of curtesy in the wife's real estate. [See In re Ferguson's Estate, 206 Mo. 203, 104 S. W. 108.] In this view it is obvious that the plaintiff widower here enjoys the same rights under the statutes above cited as those enjoyed by the widow in her deceased husband's estate, and we come now to determine those rights of the widow.

Section 114, Revised Statutes 1909 is as follows:

"In addition to dower, the widow shall be allowed to keep as her absolute property a family Bible and other books, not to exceed two hundred dollars; all the wearing apparel of the family, her wheels, looms and other implements of industry; all yarns, cloth and clothing made up in the family for their own use; all grain, meat, vegetable, groceries and other provisions

on hand and provided and necessary for the subsistence of the widow and her family for twelve months; her household, kitchen and table furniture, including beds, bedsteads and bedding, not to exceed the value of five hundred dollars.''

By this section the widow is given as her absolute property certain enumerated articles and, furthermore, all meat, vegetables, groceries and other provisions on hand and provided and necessary for the subsistence of the widow and her family for twelve months. This property, and all of it—every item therein mentioned—is by the express terms of the statute allowed to her absolutely, and it forms no part of the estate to be administered. The Supreme Court says of this section, in Waters v. Herboth, 178 Mo. 166, 77 S. W. 305, that the articles therein enumerated are given to the widow in the first instance by the statute, and it is only what is left after these articles are given to the widow that is to be treated as the estate of the husband to be administered upon. [See, also, Bryant, Admr., etc., v. McCune, 49 Mo. 546; State ex rel. Steers v. Taylor, 72 Mo. 656.] From a reading of many authorities on these statutes, it is entirely clear that the judgment of the Supreme Court adverted to is an accurate exposition of the law on the subject, and it is unnecessary to accumulate the cases here.

By the first lines of the section of the statute last above copied, the widow is allowed as her absolute property the family Bible and other books not to exceed $200. It does not appear in the instant case that any such books were owned by the decedent or that plaintiff received them. Indeed, the record is barren of proof pertaining to that matter. This being true, plaintiff's rights, if any, pertaining to a Bible and books will be put aside, for it is obvious that he may not recover on that score unless such books were owned by the decedent—that is to say, unless his wife owned

such books, plaintiff is not entitled to either books or their value.

The same is to be said touching those articles enumerated in the statute such as wearing apparel of the family, the wheels, looms and other implements of industry, the yarns, cloth and clothing made up in the family for their own use. All of these go absolutely to the widow, and in this case, if such articles were owned by plaintiff's wife at the time of her death, they would go likewise to him. But nothing appears as to them and it is certain that plaintiff is not entitled to an allowance on account of such articles unless they were owned by his wife at the time of her death, for the statute gives no allowance in lieu of them when it appears they are not on hand. We therefore put these articles and the question of an allowance on account of them aside and consider the succeeding clauses of the statute.

By the next clause, the widow is allowed absolutely all grain, meat, vegetables, groceries and other provisions on hand and provided and necessary for the subsistence of herself and her family for twelve months, and, of course, this right obtains in the plaintiff widower here. It appears no such provisions were on hand at the time of taking the inventory and he is therefore entitled to a reasonable appropriation under the express provisions of section 115 out of the assets of the estate to satisfy such deficiency. This the court found to be, and fixed by its judgment at $100.

By the succeeding and last clause of the statute, the widow is allowed absolutely her household, kitchen and table furniture including beds, bedsteads and bedding, not to exceed the value of $500, and of course the identical right obtains in the plaintiff widower here. It is therefore entirely clear that plaintiff is entitled to an award of $500 on account of the property enumerated in the last clause of the statute—that is, household, kitchen and table furniture, including beds, bed-

steads and bedding. This is true because all of the property owned by the decedent as is shown by the inventory in the record consisted of the kind and character enumerated in this clause of the statute—that is, household, kitchen and table furniture, beds, bedsteads and bedding. By the appraisement annexed to the inventory, it appears this property was valued at $770.45. It afterwards was sold for $1350. Obviously there was sufficient property of the kind and character last mentioned to allow plaintiff the full amount of specific property given him by the statute—that is to say, $500. By the conduct of defendant public administrator in taking the property into his charge, plaintiff was denied this absolute right conferred by the statute.

There was no grain, meat, vegetables, groceries and other provisions on hand as is contemplated by the statute, and therefore plaintiff was entitled to a reasonable allowance out of the assets of the estate to supply such deficiency, for such is directed by section 115; Revised Statutes 1909. That statute is as follows:

"If the grain, meat or other provisions allowed the widow in the preceding section shall not be on hand at the time of taking the inventory, the court shall make a reasonable appropriation out of the assets of the estate to supply such deficiency."

Under this section the court allowed plaintiff $100 for his year's support and to supply the deficiency appearing under the preceding section (114). Though the allowance of $100 for one year's support is meager and, no doubt, inadequate, the question was determined by the trial court on the facts and is therefore not open here for review. However this may be, it is certain that if plaintiff was entitled to $100 under section 115 to supply the deficiency on the score of provisions, etc., he was entitled to an allowance of $500 under the preceding section (114) in compensation for the specifid articles of household, kitchen, and table furniture, including beds, bedsteads and bedding enu-

merated therein as his absolute property, and of which the administrator had deprived him; and beyond question he is entitled, in the circumstances of the case, to a total of $600 under the two sections when read together on account of these items alone. The court allowed plaintiff but $100 under section 114 in compensation of the enumerated articles therein, whereas it should have allowed him $500 on that score in connection with the allowance of $100 under the succeeding section to supply a deficiency as for provisions, for it appears that the estate possessed property of the kind and character enumerated in the last clause of section 114—that is household, kitchen and table furniture, including beds, bedsteads and bedding—considerably in excess of the value of $500 which he was entitled to claim and hold by the selection of the specific articles. The court erred in allowing plaintiff $200 under these two sections when it should have allowed $600, because there was ample property of the kind and character contemplated to supply that amount.

Section 116 is as follows:

"In addition to the above, the widow may take such personal property as she may choose, not to exceed the appraised value of four hundred dollars, for which she shall give a receipt."

Under this section the widow is allowed to take such personal property as she may choose, in addition to that allowed by the preceding section, but not to exceed the appraised value of $400. All of the authorities declare this to be an absolute allowance to the widow as her property, and, of course, under the provisions of section 120 it is in this case the absolute allowance as well to the plaintiff widower in the estate of his deceased wife. The court recognized this and allowed plaintiff $400 as his absolute property, as was proper under the latter section.

To the suggestion that an allowance by the court of $600 under sections 114, 115 and an additional allowance of $400 under section 116 would total the amount of $1000 and thus exceed the appraised value of the entire estate which was $770.45, it is to be answered that here, where the property had all been sold by the administrator and converted into money, the court should be guided by the rule of decision prescribed in section 118 rather than by the appraised value of the property. Had the property been retained by the administrator, plaintiff would have been entitled to select specific articles therefrom, under section 114, and to a reasonable allowance in lieu of provisions, under section 115, and $400 in addition, under section 116. No doubt the appraised value of the property would control in determining these amounts in such circumstances, for the statute last cited seems to so contemplate. This being true, it is true, too, that all of the property taken at its appraised value— that is, $770.45—would have been insufficient to satisfy plaintiff's allowance of $100 and absolute rights, which total the amount of $1000. In such case, the loss would fall on plaintiff because the estate was insufficient to compensate the $400 allowance under section 116 after the selection of specific articles was made under section 114 and the reasonable allowance for provisions under section 115. But be this as it may, the administrator did not retain the property and the matter of its appraised value is therefore wholly immaterial, for the reason it was sold and converted into money. Plaintiff's rights attach to the money received for the property and are to be determined in view of that fact, for the statute so prescribes.

Section 118, Revised Statutes 1909 is as follows:

"If the widow do not receive the property thus allowed her, and the same be sold by the executor or administrator, the court shall order the money to be

paid to the widow at any time before the same be paid out for debts or be distributed.''

On a sale of the property the administrator realized $1350 therefor and this is amply sufficient to satisfy plaintiff's claims amounting to $1000. Though it be that plaintiff's claims could not have been satisfied in full by accepting the property at its appraised value, he was entitled, under section 114, to specific articles of household property, which, without the allowance for provisions, amounted to $500, and was given an allowance of $100 under section 115 and to other property, according to his choosing, to the value of $400 under section 116, the latter to be satisfied out of so much of the estate as remained in the hands of the administrator after his selection of specific articles was made and the allowance for provisions satisfied. If to satisfy these claims would operate to exhaust the estate and leave a deficiency besides, even so, plaintiff would have had all of the property of the estate for his claims and it may be the claims not fully satisfied according to the appraised value. But be this as it may, the administrator having sold the property for $1350, plaintiff is entitled to participate in the inflation of values over and above the appraised value proportionately with the estate and it is obvious the statutes so contemplate. He therefore is entitled to allowances as follows: $500 under section 114 in compensation for specific articles of furniture, $100 under section 115 on account of provisions, and $400 in compensation of his additional absolute allowance under section 116. This is true in view of the finding for $100 on account of provisions because the statutes direct payment accordingly when the property is sold and it appears, as it does here, that there was sufficient of property of the kind and character involved to satisfy plaintiff's rights to specific articles and provisions under section 114 and 115, and sufficient, too, when cor

verted into money to satisfy his absolute allowance of $400 under section 116.

We come now to consider the defendant's counterclaim. As before stated, the administrator filed a counterclaim in the probate court and sought a recovery for the use of the property by plaintiff during the time between October 1, 1909, and the early part of April, 1910, when the administrator came into possession. As the case originated in the probate court, the power of the circuit court to hear and determine the counterclaim is, of course, derivitive solely through the appeal from the probate court. But under sections 198, 199, 200, Revised Statutes 1909, the probate court is possessed of jurisdiction to entertain a counterclaim interposed by an administrator in cases where counterclaims are otherwise authorized by law. [See Mitchell v. Martin, 63 Mo. App. 560; In re Jarboe's Estate, 227 Mo. 59, 79, 80, 81, 127 S. W. 26; Albert Grocer Co. v. Estate of Painter, 66 Mo. App. 481; Bealey v. Smith, 158 Mo. 515, 59 S. W. 984.]

However, under the general statute authorizing counterclaims (Sec. 1807, R. S. 1909) the counterclaim must be one in favor of a defendant and against a plaintiff between whom a several judgment might be had and arising out of one of the following causes of action: First, a cause of action arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim or connected with the subject of the action; second, in an action arising on contract, any other cause of action arising also on contract and existing at the commencement of the action. There is no contract right involved here and neither is there a transaction set forth as the foundation of the plaintiff's claim out of which a counterclaim could arise. If the counterclaim is to be considered at all, it is because it is "connected with the subject of the action." The words "subject of the action," employed in the counterclaim statute, denote

the plaintiff's principal primary right, to enforce or maintain which his action is brought. It is said the phrase is different from "cause of action," in that it signifies the ultimate or primary title, right or interest which a plaintiff seeks to enforce or protect and not merely the wrong to be redressed in the particular case. [See McCormick Harvesting Mach. Co. v. Hill, 104 Mo. App. 544, 588, 589, 79 S. W. W. 745; Bliss, Code Pleading (3 Ed.), secs. 126, 373; Pomeroy, Code Remedies (4 Ed.), sec. 651, *et seq.* Here, plaintiff's primary and principal right, which is asserted in his complaint, relates to his allowance of absolute property out of his wife's estate and in assurance of this right, he withheld and used all of the property of the estate for the several months above stated. Because of this withholding and use in assertion of that right, the administrator seeks by his counterclaim to recover compensation at least for the use of such property as plaintiff was not entitled to withhold from him. We believe the claim of the administrator for this should be regarded as "connected" with the subject of plaintiff's action, for the courts are prone to liberally construe the statute and effectuate its obvious intent and purpose in permitting the adjustment of such claims as appear to be thus connected and may be intelligently settled in the same controversy. [See McCormick Harvesting Mach. Co. v. Hill, 104 Mo. App. 544, 79 S. W. 745; Bliss, Code Pleading, section 373.] We say this, too, because it may be, where an entire estate is withheld in such circumstances and the property seriously damaged so that its *corpus* would be diminished in value, it would be highly unjust to deny the right of the administrator to counterclaim for this tort of the widower or widow and compensate it out of the allowance of absolute property, especially if the *tortfeasor* was insolvent. But no such question is involved here, and it is adverted to solely for the purpose of vindicating the right of counterclaim in some

cases where injustice on innocent parties, such as creditors and distributees, might be entailed without it. It is certain that there can be no right of recovery on the counterclaim in any case for the mere use of the property allowed absolutely by the statute to the widower or widow, as the rights pertaining to such property pass to him or her in the first instance and not to the estate. But though such be true, speaking generally, the withholding and use of that portion of the property over and above the absolute allowances are not on the same footing and a different question arises as to that matter. It may be a right of recovery obtains in some cases as to such withholding and use and it may be that no right of recovery arises on the counterclaim for mere use of the property because the relation of landlord and tenant does not appear, but we will pass those questions, as we prefer to predicate the judgment of the court on another instead.

For the purpose of the case only, we may concede that the counterclaim stated a cause of action between these parties which was connected with the subject of the plaintiff's action, but even then the proof reveals that no recovery should be had thereon. It appears that on the 29th day of October the probate court, upon a hearing being had, ordered that no letters of administration should issue upon the estate of plaintiff's deceased wife, for the reason that it was not greater in amount than is allowed by law as the absolute property of the widower, and awarded it all to him. By section 10, Revised Statutes 1909, the probate court possessed full and complete jurisdiction touching this matter and under that statute plaintiff was rightfully in possession of the property until the order so made was revoked. On this question the statute mentioned provides as follows: "And after the making of such order and until such time as the same may be revoked, such widower, widow or minor children shall be authorized to collect, sue for and retain all the property

belonging to such estate; if a widow or widower, in the same manner and with the same effect as if he or she had been appointed and qualified as executor or executrix of such estate.'' Obviously plaintiff was rightfully in possession of the property under an adjudication of a court of competent jurisdiction and was there-fore not liable to respond for its mere use to anyone until such order was revoked. [McMillan v. Wacker, 57 Mo. App. 220; Griswold v. Mattix, 21 Mo. App. 282.] Had the property been damaged by plaintiff during the time he is alleged to have withheld it and the order of the probate court been revoked, it may be another question would arise concerning the resi-due after the absolute property was deducted; but that proposition is not before us and we express no opinion thereon. It is sufficient, for the purposes of the present case, to say that it does not appear that the order of the probate court, made on October 29th, was ever set aside or revoked, unless the fact that the public administrator thereafter filed upon and took charge of the estate should be so considered. It there-fore appearing that plaintiff was in possession of the property under the order of the probate court, he should be regarded as rightfully in possession there-of and without an obligation to compensate for its use, at least until the public administrator became clothed with authority thereabout and he persisted, notwith-standing, to withhold and use the property. As before stated, it does not appear the order of the probate court was revoked, unless the mere filing on the estate by the public administrator would operate this result. When the public administrator filed on the estate does not appear. That he inventoried it January 20, 1910, and made a supplemental inventory on April 8, 1910, does appear, and there is naught in the record tending to show the public administrator attempted to exercise any authority before January 20. It is true the stat-ute (Sec. 302, R. S. 1909) in its fourth subdivision au-

thorizes the public administrator to take charge of an estate "when money, property, papers or other estate are left in a situation exposed to loss or damage, and no other person administers the same," and by section 305 he is authorized to enter upon the discharge of his duty under section 302 by the mere filing of a notice of the fact in the office of the clerk of the probate court without an order of the probate court touching the matter. [See Leeper v. Taylor, 111 Mo. 312, 19 S. W. 955.] But though such be true, it is obvious that the mere filing on an estate by the public administrator cannot operate *ipso facto* to revoke an order of nonadministration made by the probate court on a full hearing under section 10, Revised Statutes 1909, above quoted. Though the probate courts are inferior and of limited jurisdiction, it is well settled that their judgments given on such subjects as are within their jurisdiction are entitled to the same weight as that of any other court of record and are regarded as conclusive in all collateral proceedings as here. [See Johnson v. Beazley, 65 Mo. 250.] Though in the ordinary case, the rights of the public administrator would attach on the mere filing of his notice, we are unwilling to accede to the proposition that such fact alone would oust the plaintiff of his rights in the premises which were being exercised under the valid order of a court of competent jurisdiction. In this view, plaintiff was entitled to withhold and use all of the property under the order of the probate court, and the public administrator is without any right whatever in the premises. But as the property has been sold and converted into money by the administrator, and this, too, with the full acquiescence of plaintiff and in accordance with a stipulation executed by both parties and on file in the case whereby plaintiff agrees to accept satisfaction in money in accordance with his statutory rights touching such allowances, it would seem that the precepts of natural justice require that his rights shall be sat-

isfied by a compensation in money out of the fund in accordance with the views above expressed.

The judgment should therefore be reversed and the cause remanded with directions to the trial court to enter judgment for plaintiff and against defendant on the counterclaim and in favor of plaintiff and against defendant for $1000, together with interest at six per cent, on plaintiff's cause of action and his costs. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.