STROTHER H. TODD, Respondent, v. THE SECURITY INSURANCE COMPANY OF NEW HAVEN, CONNECTICUT, Appellant.

Kansas City Court of Appeals, May 10, 1920.

1. **FIRE INSURANCE:** Proper Party to Sue: Policy Payable to Estate. At time of issuane of policy of fire insurance the "estate of Anna Todd, deceased" was named as the insured, a rider subsequently attached to the policy designated plaintiff as the

insured; the probate court made an order refusing to grant letters of administration on the estate of Anna Todd, deceased, as the property left by her was no more than the law allowed the widower, and such widower, the plaintiff, was authorized to collect and retain all the property belonging to the estate. *Held*, that in view of the recognition of plaintiff as the insured in the rider, and in view of the order of the probate court plaintiff was the proper person to sue.

2. ———: **Vexatious Refusal to Pay: Jury Question.** Whether or not the defendant's refusal to pay was vexatious or based upon a reasonable belief that plaintiff had burned the house is a question for the jury, unless it appears that unquestionably the circumstances were such as to justify a reasonable man in refusing to pay.

3. ———: **Value of Insured Property: Instruction.** In the absence of a showing of a depreciation in the value of the insured property, it is not erroneous to direct the jury, if they found for plaintiff. to find in the amount provided in the policy.

4. ———: **Vexatious Refusal to Pay: Proceedings by Defendant After Suit.** Where, after suit is brought on a policy of fire insurance, and the defendant takes change of venue and continuances, it is error to modify an instruction requested by defendant to the effect that the jury should disregard the court proceedings in granting change of venue and continuances with the qualification "unless you believe the proceedings of the court were induced by defendant solely for purpose of vexation and delay;" the jury must determine the question of vexatious delay by the circumstances occurring. *prior* to the suit.

Appeal from Howard Circuit Court.—*Hon. A. W. Walker*, Judge.

AFFIRMED (*conditionally*).

*John Cosgrove* for respondent.

*Lionel Davis* and *Sam C. Major* for appellant, Insurance Co.

TRIMBLE, J.—For the third time the defendant brings this case here on appeal. The first two were disposed of as shown by opinions reported in 194 S. W. 734, and in 206 S. W. 412.

The suit is on a policy of fire insurance issued by the defendant upon a dwelling house and the furniture

therein.   The policy, dated October 16, 1912, was for three years from October 27, 1912, or until noon of October 27, 1915, and, originally, it was for $1200 on the house and $400 on the furniture, but on June 26, 1913, through a mutual agreement between plaintiff and the company, by a rider attached to said policy, the insurance was reduced to $850 on the house, and $250 on the contents.

On August 14, 1915, the insured property was totally destroyed by fire, the general circumstances of which are set forth in the opinion by BLAND, J., on the first appeal reported in 194 S. W. 734, 735.

The suit was instituted December 11, 1916, for the full amount of the insurance on each class of property, with ten per cent damages and a reasonable attorney's fee for vexatious refusal to ·pay, as provided by section 7068, Revised Statutes 1909, together with interest and costs.  The trial resulted in a verdict and judgment for the full amount of the insurance with interest, and ten per cent damages and $250 attorney fee for vexatious refusal to pay.

At the time the policy was issued, R. W. Whitlow held a mortgage of $750 on the house and a clause in the policy made loss, if any, payable to him as his interest might appear.   The petition set up the Whitlow mortgage and alleged that after the fire Whitlow, on October 30, 1915, advertized and sold the lot under his mortgage for $420, which was not sufficient to pay the mortgage and expenses of sale, and that, therefore, Whitlow, was made a party defendant and the petition asked that he be required to show the amount yet due him on his note. Whitlow entered his voluntary appearance, consented to a trial at the trial return term, to-wit, January Term, 1916, and showed that after the expenses of foreclosure were paid there was due him on the note the sum of $348.15.

The answer admitted the issuance of the policy in the way hereinafter shown, the reduction of the insurance, and that loss, if any, was payable to Whitlow as his interest might appear, but set up as defenses, that the policy was not payable to plaintiff and he was not the

proper party to sue, and that the fire was caused and brought about by the plaintiff himself; and the answer denied that defendant had vexatiously refused to pay.

The point that the plaintiff is not the proper party to sue because the policy was not made payable to him, is not specifically set out in the "Points and Authorities" of appellant's brief, nor is any citation of authorities or argument made in support of any such contention. However, point is made that there is no evidence to justify a finding of vexatious refusal to pay because reasonable grounds exist for the belief that insured *did not have a legal demand.* This last *might* rest upon two claims, first, that the policy not being to plaintiff, he was not the party to sue, and second, that he burnt his own property. As the whole aim and scope of the appellant's brief is devoted to the second of these matters, and no effort is made to cite any authorities or law in support of the first, it is reasonable to suppose that appellant is not now pressing the said first matter, namely, that plaintiff is not the one insured or entitled to sue. But preferring to be liberal rather than technical in the construction of the scope and sufficiency of appellant's "Points and Authorities" to present questions involved, we will assume, without deciding, that such point is sufficiently preserved in the brief for our consideration, though no assistance is given on such point.

When the house and lot was -purchased in 1903, plaintiff paid the consideration therefor, but the property was conveyed to Anna Todd, who was the plaintiff's wife. She died in March, 1912, leaving her husband, the plaintiff, and two adult sons as her only heirs. When the policy was issued in October, 1912, it named the "estate of Anna Todd, deceased" as the insured. When the rider, reducing the insurance as above stated was attached to the policy, the *plaintiff* was designated therein as the insured. The policy was valid although made payable to the estate of Anna Todd. [1 Joyce on Ins. (2 Ed.), sec. 310 ], and the rider, dealing with and affecting the entire contract of insurance, recognized plaintiff as the insured and the one for whom the insurance existed and

to whom it was payable in case of loss, subject, of course, to the rights of the mortgage under his clause, but, since he is a party to the suit claiming loss then the amount of the insurance, there can be no objection raised on account of him or his rights.

On September 13, 1913, the probate court made an order refusing to grant letters of administration on the estate of Anna Todd, deceased, as the property left by her was no more than the law allowed to her widower. This order was made and "after the making of such order and until such time as the same may be revoked, such widower" was "authorized to collect, sue for and retain all the property belonging to such estate." [Sec. 10, R. S. 1909; Nelson v. Troll, 173 Mo. App. 51.] This order was a judgment entitled to the same weight as a judgment of any other court of record and is not open to collateral attack. [Nelson v. Troll, supra: Johnson v. Beasley, 65 Mo. 250; Henry v. McKerlie, 78 Mo. 416, 429.] So that, in view of the recognition in the rider that plaintiff was the insured, and in view of the order of the probate court, there is no question but that plaintiff was the one entitled to sue. Hence instruction No. 1 for plaintiff was properly given.

We have carefully read the record and find very little basis, except suspicion, for the charge that plaintiff burnt his own property. It was worth considerably more than the insurance thereon. Plaintiff had a gasoline stove burning in the kitchen and he was doing the family washing. It was about 2 p. m. and he had gone into the yard to hang out the clothes. While so doing, the apparatus regulating the flow of gasoline became defective allowing the gasoline to run out and it caught fire. It was very hot weather and all of the house was open except that the windows in the kitchen were down to prevent the draft from affecting the gasoline burners. When the vapor from the escaping gasoline finally reached the flame, of course there was a flash or an explosion thereof and instantly the fire was all through the house and in every part thereof except one room. Plaintiff's son, who worked at night, was asleep in this room

and it was closed.  Plaintiff had to run around the house to get to this room to arouse his son.  The neighbors and fire department came and extinguished the fire, as they supposed, and went away.  The house was a one story building with a flat tin roof only a short space above the ceiling.  A neighbor, stopping in some time after the fire was first extinguished, was of the opinion that it was not entirely out and upon examination found fire in the ceiling in the top of a closet, a small hole having burned through *from above* and a piece of lath dropped down. The alarm was given and the department and neighbors came again and put out the fire.  Plaintiff, not being sure of it, asked the fire department to leave the hose cart there but as the water had given out they said it would be of no use.  Plaintiff was fearful that the fire was not yet extinguished and stayed that night out in a chair in the yard to avoid danger in that regard and to guard against such a possibility.  He asked the insurance agent to have some one stay with him but no one stayed.

About midnight the fire broke out in the roof again and a passing neighbor saw it and awoke the plaintiff who had fallen asleep.  The fire in the roof was on the other side of the house and could not be seen by plaintiff. Efforts were made to extinguish it but this time it was under such complete headway it could not be brought under control.

The evidence as to the extension of the fire from burning gasoline vapor, and its behavior under such circumstances, shows that the fire would almost instantly extend to every part of the house; and it is not unreasonable to believe that the fire, having penetrated the ceiling and gotten between it and the tin roof, could there smoulder and continue unobserved until it finally succeeded in breaking forth during the night and destroying the house.  We do not see anything remarkable or conclusive in the difference in plaintiff's explanation as to how the fire originated at the former trials and this one.  The impression produced by a flash and the flame towering up to the ceiling could well be described by saying "the stove exploded and went up like a rocket" even though

upon examination afterward the *stove itself* was found to have remained where it was, and plaintiff this time explains how the trouble occurred and does not claim that the stove itself exploded but only that the escaping gasoline, or gasoline vapor therefrom, did. Plaintiff is corroborated by a boy who was passing and saw through the window the flash of the flame as it flared up. He is also corroborated by other disinterested witnesses as to way gasoline and gasoline vapor will act when ignited and as to how fire thus caused will smoulder unobserved and burst forth again when not expected even though it was, to all appearances, theretofore extinguished. The jury could well find that plaintiff was not guilty of anything wrong and did not contribute to the fire in any way, and hence the trial court was clearly right in overruling defendant's *general* demurrer to the evidence.

It is now contended that the court erred in submitting to the jury the question of vexatious refusal to pay for the reason that there was *no evidence* of vexatious refusal except certain evidence hereinafter referred to which, defendant says, was erroneously admitted. With regard to the claim that there was no evidence justifying a submission of the issue of vexatious refusal to pay, we may observe that no *special* demurrer to that feature of plaintiff's case was asked; nor was any instruction asked specifically challenging plaintiff's right to recover on that particular issue. On the contrary, defendant asked an instruction (number 2) bearing on vexatious refusal. Under these circumstances it may be questionable whether defendant is entitled to convict the trial court of error for having allowed that feature to go to the jury. [Torrance v. Pryor, 210 S. W. 430, 433.] The general demurrer went to the whole case, and, as it was properly overruled, where was there anything to call to the trial court's attention the point there was no evidence of vexatious delay? But, however this may be, we are of the opinion that there was sufficient evidence in the record to justify the submission of that issue to the jury. Although promptly notified of the fire, yet the

company did not reply thereto or send blanks as required by sections 7028 and 7029, but plaintiff, nevertheless, made out proofs of loss and sent them in. To this the company made no reply, nor did the adjuster ever call upon the plaintiff in reference thereto. There was no offer or willingness manifested to pay the "estate of Anna Todd deceased" or whomsoever was entitled to receive the insurance for the estate. Hence the defendant cannot excuse its failure to pay on the ground that it was not certain to whom the insurance should go. Although it raised, in this case, the question of *plaintiff's* right to sue, that could not be used further than to raise that point, the only effect of which would be to defeat this suit if plaintiff was not the one legally entitled to the insurance. Such question could not be relied upon as a defense to the charge of vexatious refusal to pay since no willingness was manifested to pay the insurance to any one who would be unquestionably entitled to receive it. Indeed, we do not understand that defendant is contending it was justified in refusing to pay for any cause except that it had reasonable grounds to believe plaintiff burnt his property. The fear that the two sons might claim some interest in the insurance money could have been no reason for an absolute refusal to pay anyone, for the evidence shows that the defendant's local agent had drawn up a deed from the two sons *dated* August 3, 1915, conveying whatever interest they had in the property to their father for $1, love and affection. This deed was sent to the sons for their signature but was not acknowledged or delivered until after the fire and after the sale under the deed of trust. There was, therefore, no change in the title to the property at the time it burned and the insurance became due; but this does show that the two sons were making no claim to the insurance money. So that refusal to pay would not have been justified upon that ground even if that had been one of the reasons for not paying, which manifestly it was not.

But defendant says the evidence shows it had reasonable grounds to believe plaintiff burned his house,

and, as stated, this is the ground relied upon to defeat a recovery for vexatious refusal to pay. As heretofore stated, defendant, without *specifically* demurring to plaintiff's right to submit the issue of vexatious refusal, or calling the court's attention thereto, and without asking an instruction challenging *that* right, asked an instruction bearing on that issue, hence there may be some question as to whether defendant is now in a position to claim there was no evidence supporting such issue. However, without regard to and aside from this, and granting that defendant still has such right, before we can say as a matter of law that defendant had such reasonable grounds and acted in good faith, it must appear with such reasonable conclusiveness as to enable us to say that unquestionably the circumstances were such as to justify a reasonable man in refusing to pay and in requiring the question of whether plaintiff burned his own property to be *litigated*. We do not think we can so declare as a matter of law. Under the circumstances of this case we think the question of whether defendant believed in good faith that plaintiff burned the house or merely acted arbitrarily and wilfully upon a mere *unfounded* suspicion, was a question for the jury. Certainly we cannot say, as a matter of law, that the facts occurring *prior to the institution of the suit* wholly fails to support any inference of vexatious delay. [Keller v. Home Life Ins. Co., 198 Mo. 440, 460; Hicks v. Metropolitan Life Ins. Co., 190 S. W. 661, 664; Kellogg v. German American Ins. Co., 133 Mo. App. 391, 403.]

Complaint is made that the court erred in instructing the jury that if they found for plaintiff they should find for the $850 insurance on the house and the $250 on the furniture. There was no showing or claim of any depreciation in the value of the property. It was not of a character that would depreciate much in the time elapsing from June, 1913, the date of the rider to August, 1915, the date of the fire; and under section 7030, Revised Statutes 1909, the property is conclusively presumed to be worth at the time of the insurance one-

Todd v. Ins. Co. of New Haven.

fourth more than the amount of the policy. In view of this, and in view of all the evidence in the case, we think there was no reversible error in the instruction. [Strawbridge v. Standard Fire Ins. Co., 187 S. W. 79.]

The suit was brought December 11, 1915, and service was had in time for trial at the January term, 1916, of the Cooper County Circuit Court. Defendant appeared at that time by certain counsel and filed a general denial. Afterwards other counsel appeared for defendant and withdrew the answer and filed a demurrer which was overruled, whereupon, defendant immediately filed an application for a change of venue based on the prejudice of the judge. Afterwards the case was "continued along" until the time of its first trial.

The defendant objected to this testimony and the trial court ruled that it was not *per se* evidence of vexatious delay but that the evidence was admissible as bearing upon the reasonableness of the attorney's fee, and it was admitted for that purpose. At the close of the case defendant asked an instruction telling the jury that "the court instructs the jury that in considering the question as to whether or not there has been vexatious delay on the part of the defendant in paying this loss you will not take into consideration the proceedings of the court in granting a change of venue or in granting the continuances; or any other proceedings of the court since the institution of this suit." This the court modified by adding thereto these words, "unless you further find and believe from the evidence that such proceedings, actions or orders of the court were sought or induced by the defendant merely and solely for the purposes of vexation and delay." We think this was prejudicial error. In the first place, the only evidence in the record on the subject of *continuances* tends only to show that they were *by consent* out of consideration to one of counsel who was a candidate for Congress. In the next place, if the defendant was justified in litigating *at all* there is no evidence whatever from which the jury could say the change of venue and continuances were not justi-

fied and proper. The only basis upon which the jury could form any opinion as to the defendant's *motive* in taking such legal steps as these, would be that defendant had no sufficient grounds upon which to justify a reasonable man in refusing to pay and in compelling a suit to be *brought*. But the grounds of this must appear from matters arising *prior* to the suit. And if they appear, then they alone are sufficient to enable the jury to determine the question of vexatious refusal and the evidence of subsequent steps, which the law gives a litigant, are unnecessary. If it be said that a case might arise where the jury could not determine the issue of vexatious refusal, unless they had both kinds of the above matters before them, then we say that the present case is not one of them. Besides, it seems to us that if the evidence as to vexatious refusal is so close or uncertain that the jury cannot say whether such exists without going into the propriety of the orders or legal steps taken in court, then the issue of vexatious refusal should be decided against the plaintiff rather than that the jury should be allowed to guess or speculate concerning legal matters with which they are wholly unfamiliar.

There are other matters complained of with regard to the instructions, but they are without merit.

Owing to the error in the above mentioned instruction, the judgment will have to be again reversed and the cause remanded for a new trial if the plaintiff desires to recover on the issue of vexatious refusal. However, the error may be cured and the necessity for remanding may be obviated, by a remittitur of the ten per cent damages and the attorney's fee.

If, therefore, the plaintiff will, within ten days from the announcement of this opinion, file such remittitur the judgment for the insurance will be affirmed, otherwise the judgment will be reversed and the cause remanded for a new trial. The other judges concur.