McCORMICK HARVESTING MACHINE COMPANY, Appellant, v. HILL, Respondent.

St. Louis Court of Appeals, February 16, 1904.

1. **ERROR SELF-INVITED.** Where a party acquiesces in an instruction to the jury, which presents an erroneous theory of the case, he can not be heard to complain of the error on appeal.

2. **JUSTICE COURT: Counterclaim: Dismissal of Plaintiff's Action.** Under sections 3937 and 4009, Revised Statutes of 1899, where an action was brought before a justice of the peace and a counterclaim was filed by defendant, and the plaintiff afterwards dismissed his cause of action, the justice had jurisdiction to proceed to trial on the counterclaim as did also the circuit court to which the case was appealed.

3. **PRACTICE: Motion in Arrest.** Objection may be raised by motion in arrest that the petition or other pleading on which a party has obtained affirmative relief, fails to state a cause of action, and this applies to a counterclaim filed in an action which originated before a justice of the peace.

4. **REPLEVIN: Counterclaim.** In an action for possession of personal property, the plaintiff's demand for possession may be opposed by any defense which goes to defeat his right; and if, in addition to the possession of chattels, the plaintiff asks damages for their detention, whatever defense will defeat or diminish his

recovery of damages ought to be allowed, whether it be a defense in the nature of a set-off, counterclaim or defensive matter in the strict sense of the words.

5. ———: ———. And with a view to settling all controversies in one action, where possible, a counterclaim in a replevin suit may be enforced to the extent of granting affirmative relief to the defendant by judgment in his favor for an amount above what is found due to the plaintiff, as a separate cause of action in defendant's favor, and not merely as a matter of defense.

6. ———: ———: **Subject of Action.** In an action of replevin for the recovery of animals under a chattel mortgage which secured a note given in payment for machinery, the subject-matter of the action was the alleged indebtedness secured by the mortgage, and a counterclaim filed by defendant for the value of the machinery returned to the plaintiff was sufficiently connected with the subject-matter of the action to enable him to maintain it.

Appeal from Ozark Circuit Court.—*Hon. G. W. Thornsberry,* Judge.

AFFIRMED.

*Green & Clark* for appellant.

Defendant's answer to plaintiff's statement before the justice of the peace, was not a counterclaim, and could not preclude plaintiff from dismissing its suit against defendant. R. S., sec. 605 and sec. 4499; Heman v. McNamara, 77 Mo. App. 1; Zerbe v. Railroad, 80 Mo. App. 414.

GOODE, J.— The plaintiff sold the defendant a wheat binder or harvesting machine for $130, for the purchase price of which defendant gave plaintiff three promissory notes, secured by a chattel mortgage on two horses and two cows.   Defendant subsequently made a payment of $42 on the notes and still later delivered the binder to the plaintiff with an understanding which is in dispute.   Plaintiff says it was to take the binder and

credit its value as a second-hand machine on the notes; the defendant says the agent of the plaintiff came to him and demanded the machine, saying he had authority to take it; that defendant told the agent if he had that authority he would have to take it and thereupon gave the machine to the agent; that he supposed the company wanted the machine in place of the debt, and there was no understanding as to the exact credit to be allowed for it on the indebtedness. It is very clear from defendant's own statement that he voluntarily relinquished possession of the machine.

This is an action of replevin which was instituted December 31, 1902, by the plaintiff before a justice of the peace to recover possession of the horses and cattle embraced in the chattel mortgage. The statement filed before the justice described the animals and alleged that they were wrongfully detained by the defendant, with other appropriate averments, and prayed judgment for possession of them and $44 damages for their detention. The defendant filed an answer containing a general denial and also a counterclaim. In the latter he averred that he had theretofore purchased of the plaintiff a wheat binder for $130 and had executed his three promissory notes for the purchase price, secured by a mortgage on the horses and cows sued for by the plaintiff; that he had paid forty-two dollars on the notes; that the plaintiff, without legal process, took possession of the binder on December 26, 1902, for the purpose of applying it on said indebtedness; that it was of the value of $125; that defendant had therefore overpaid plaintiff in the sum of $37, for which plaintiff was indebted to defendant. He prayed judgment for the sum overpaid and twenty-five dollars which he averred he had been damaged by the replevin suit.

It should be stated that the horses and cows were not taken from the defendant's possession and he was not, of course damaged by the replevin action, except the amount of the costs he incurred in defending it.

The plaintiff dismissed its action, the justice heard testimony, found that the right of possession of the property was in defendant at the commencement of the action, adjudged that the plaintiff take nothing by the suit, that the defendant recover possession of the property described in plaintiff's statement, the costs of the action, and found "for the defendant on his counterclaim in a sum equal to plaintiff's demand." From the judgment plaintiff appealed to the circuit court of Douglas county, and filed in that court on February 13, 1903, a replication to the counterclaim which the defendant had filed before the justice. It is as follows:

"Plaintiff for reply to defendant's answer admits that its interest in the property described in complaint is by and through a chattel mortgage, as set out in the answer of defendant; admits the payment of forty-two dollars on the indebtedness, as set out by the defendant; admits that the wheat binder was turned over to plaintiff to be applied on the payment of indebtedness of the defendant; but plaintiff denies that said binder is worth the sum of one hundred and twenty-five dollars, and alleges and avers that said binder is not worth exceeding thirty dollars, for which amount plaintiff is willing to give defendant credit; and plaintiff alleges and avers that with the cash credit as aforesaid, and the binder at thirty dollars, there is still due plaintiff eighty dollars on said indebtedness. That said sum is due and unpaid and the conditions of said chattel mortgage have been broken and plaintiff is entitled to the possession of the property therein described.

"Plaintiff further replying denies each and every other allegation in said answer contained."

A jury trial was had in the circuit court on the issues thus joined. Practically all the evidence taken during the trial related to the value of the harvesting machine at the time it was surrendered by the defendant to plaintiff's agent. At the conclusion of the evi-

dence plaintiff's counsel prayed the following instruction, which the court gave:

"The court instructs the jury that the only issue in this case is the value of the machine and the burden of proof is on the defendant to show its value."

The court gave this instruction on its own motion, but without objection or exception by the plaintiff:

"You are instructed to find for the defendant in whatever amount the evidence shows the machine was worth at the time plaintiff took it."

The jury returned a verdict in favor of the defendant in the sum of $87.50. A motion for a new trial was filed which set out that the verdict was against the law, against the evidence and was excessive. A motion in arrest was also filed, which states these grounds: "First. Because the defendant's cause of action was dismissed in the justice's court and no judgment can be rendered therein in this court. Second. Because, on the record, there is nothing on which to base the judgment."

Those motions were overruled, exceptions saved, and an appeal taken to this court.

The foregoing statement shows that the case took a very singular course and was tried in the circuit court as though the defendant ought to recover damages for the unlawful conversion of the machine by the plaintiff. It is palpable that no such cause of action existed in favor of the defendant; for, according to his own evidence, and one might say, his own pleading, he relinquished the machine voluntarily in order that it might be applied in either total or partial payment of his notes. The answer, in demanding credit for the value of the machine, treats the taking of it by plaintiff as an act assented to; for if it was tortiously taken no payment could be asserted on such an act, but only a demand for damages. The answer averred that the machine when taken was worth $125 and asked a credit for that amount on account of having turned it over to the plaintiff.

There was evidence to show that it was worth less than $125 and some testimony that when it was surrendered its value did not exceed $30, the sum for which plaintiff was willing to allow a credit on the notes. That it was taken from the defendant's possession with his consent, appears from the fact that after he had surrendered it to the agent of the Harvesting Company, he (defendant), agreed to let the machine remain on his premises for the time being and to take care of it for the plaintiff. With these facts in proof, there can be no doubt that the judgment against the plaintiff for the full value of the binder, without taking into consideration its claim against the defendant for the unpaid balance of the purchase price, was unjust. In fact, the defendant's counterclaim only demanded judgment for $37, which was the excess he averred he had paid on his indebtedness to the plaintiff. It is true he asked $25 damages on account of this action; but manifestly, he was entitled to nothing, as he was not damaged at all; since the property sought to be replevied was not taken from him. Besides, no testimony was offered to support that demand. Defendant should have had judgment for but $37 at most; but he got judgment for fifty dollars more than that; the plaintiff acquiescing in the instruction to the jury to return a verdict for the defendant for the value of the machine. The error committed was, therefore, self-invited by the plaintiff and can not be complained of on appeal. That ruling of the court was matter of exception and no exception was saved during the progress of the trial.

With the case in the posture stated, plaintiff must look for relief to errors apparent on the face of the record and assigned in its motion in arrest. The first of those assignments is that the dismissal of the replevin action by the plaintiff operated to dismiss the defendant's counterclaim and terminate the magistrate's jurisdiction of the cause. The right to file a counterclaim in an action before a justice of the peace is coextensive

with the same right in the circuit court, except that equitable counterclaims can not be filed before a justice nor such as exceed in amount the jurisdiction of a justice's court. R. S. 1899, sec. 3937. It is further provided by statute that if a counterclaim or set-off is filed before a plaintiff has dismissed or withdrawn his action, the defendant shall have the right to proceed with the trial of his claim and have judgment thereon if he establishes it by evidence. R. S. 1899, sec. 4009. By virtue of those statutes, the dismissal of plaintiff's action did not deprive the defendant of the right to proceed on his counterclaim, if a counterclaim lies in an action of this kind. We will immediately investigate that legal question and also whether the present counterclaim presents facts sufficient to constitute a cause of action. Granting that a counterclaim may be filed in a case like this, the dismissal of plaintiff's action did not necessarily carry the counterclaim with it, nor deprive the court of jurisdiction to hear evidence and give judgment thereon. Whether a justice can try a counterclaim after a plaintiff has dismissed his case is not a jurisdictional question. The justice's course in proceeding to try this defendant's counterclaim was at most an error, and not void as beyond his jurisdiction. A justice of the peace has jurisdiction of replevin actions of the magnitude of this one, and also of counterclaims for the amount demanded by the defendant, and a circuit court has jurisdiction of such an appeal. When the case reached the circuit court, the plaintiff made no motion against the right to proceed on the counterclaim on the ground that the main case had been dismissed below; but filed a replication joining issue on its averments, and then proceeded to trial on the issues thus joined. Unquestionably both the magistrate and the circuit court had jurisdiction and power to give judgment on the counterclaim. We must overrule the first assignment of error, which is that no judgment could be ren-

dered giving affirmative relief to the defendant after plaintiff had dismissed its case.

Plaintiff's other contention against the validity of the judgment is that there was nothing in the record on which it could be based. This assignment goes to the validity of the counterclaim, both as to the right to prefer such a demand in an action of replevin and as to the sufficiency of the facts stated to constitute a cause of action against the plaintiff. The law is that the objection may be raised by motion in arrest that a petition, or other pleading on which a party has obtained affirmative relief, fails to state a cause of action; and if this is found to be true, the judgment must be reversed. McCarty v. Bryan, 137 Mo. 584; Burdsall v. Davies, 58 Mo. 138; Salisbury v. Alexander, 50 Mo. 142; Langford v. Sanger, 40 Mo. 160. A motion in arrest will lie whenever a general demurrer would lie to the pleading. Hart v. Harrison Wire Co., 91 Mo. 414.

The present litigation originated in a justice's court, where the rules of pleading are less exacting than in a court of record. Still, the statutes require a set-off or counterclaim presented in a justice's court to be stated. Stephens v. Barber Supply Co., 67 Mo. App. 587; Gantt v. Duffy, 71 Mo. App. 91; West v. Freeman, 76 Mo. App. 96. And, of course, the statement must contain facts to show the claimant is entitled to the relief asked. Iba v. Railroad, 45 Mo. 469; Dahlgren v. Yocum, 44 Mo. App. 277.

From the above considerations and adjudications it results that if a general demurrer could have been successfully interposed against the defendant's counterclaim, plaintiff's motion in arrest should have been sustained and the circuit court committed error in overruling it.

We will first inquire concerning the right to seek relief by way of set-off or counterclaim in actions of replevin, and under what circumstances the right may be

exercised, if at all. And on this proposition we find the decisions are divergent.

Mr. Pomeroy in his work on Code Remedies, states the rule generally that a counterclaim is not permissible in such an action save under "exceptional circumstances." Section 767 (3 Ed.). And again he says that in such a case the controlling question would be whether the counterclaim had such a relation to the plaintiff's cause of action that a recovery on it would defeat or modify the relief the plaintiff would otherwise obtain. He asks when a counterclaim will lie for money in an action to recover possession of chattels, and answers that under certain circumstances a counterclaim is proper, citing authorities on the question, and concluding that their result is that "a cause of action on contract for money may so arise out of the transaction which was the foundation of the plaintiff's claim, that it can be interposed as a counterclaim in an action brought to recover the possession of chattels." That doctrine allows a counterclaim in an action for the possession of chattels in so far as it tends to defeat a plaintiff's demand; but does not assert that affirmative relief may be obtained by a defendant on his counterclaim. It will not be gainsaid that where a party is asking judgment against another for the possession of personal property, the plaintiff's demand for possession may be opposed by any defense which goes to defeat his right; and if, in addition to possession of the chattels, the plaintiff asks damages for their detention, whatever defense will defeat or diminish his recovery of damages ought to be allowed; whether it be a defense in the nature of a set-off or counterclaim or defensive matter in the strict sense of the words. Lindley v. Miller, 67 Ill. 244; Hudson v. Snipes, 40 Ark. 75; Baldwin v. Burrows, 95 Ind. 81; Cobbey, Replevin (2 Ed.), secs. 791 to 795. If the right to possession is asserted by virtue of a lien, as in the present case, the defendant may plead a discharge of the lien by payment of the debt it secures, and

by overpayment. Proof of overpayment would be available to defeat a plaintiff's possessory action for chattels by showing he had no right to the property demanded, even though it might not authorize a judgment in the defendant's favor for the excess paid. By this rule, which is universally followed, it was competent for the defendant Hill to plead and prove that he had overpaid the notes secured by the chattel mortgage on which the Harvesting Company's possessory right to the animals in controversy was founded, both in order to prevent their being taken out of his hands and to defeat the plaintiff's demand for damages for their unlawful detention. In so far as the payments went to discharge the notes, they constituted pure matter of defense; but in ordinary actions the excess would be matter of counterclaim. Now, after the plaintiff dismissed its action of replevin, the defendant did not need to prove defensive matter and the case should have ended with a judgment in his favor for the possession of the stock, and for the costs, unless he was entitled to go further and get affirmative relief.

We have looked into many decisions on the question of obtaining such relief in replevin cases, in order that their bearing on the decision of the present case may be deduced, and will subjoin them under such syllabi as the point in judgment in each one appears to render appropriate. As the rights of set-off and counterclaim are statutory creations, it was to be expected that they would be more liberally regarded as the courts grew to understand the spirit and purpose of the code. and appreciate more the usefulness of a liberal construction of the changes it wrought in the common law, not only in conferring these particular rights on litigants, but generally in the rules of pleading and procedure.

Some of the decisions which deny the right of set-off or counterclaim in actions for the possession of personal property, appear to have determined the question, either without a statute on the subject of counterclaim

to control the court, or without reference to it if one existed. Phillips v. Monges, 4 Whart. 226; Fairman v. Fluck, 5 Watts 517; Williams v. Irby, 15 S. C. 458; Talbott v. Padgett, 30 S. C. 167; Laycock v. Tufnell, 2 Chitty 531; Goslin v. Redden, 3 Harr. (Del.) 21. For a considerable period after the code first authorized counterclaims, in most jurisdictions they were held not to be available in any action for a tort, and, of course, not in replevin, which sounds in tort. Barhyte v. Hughes, 33 Barb. 320; Smith v. Hall, 67 N. Y. 48; Gottler v. Babcock (N. Y. C. C.), note 7 Abb. Prac. 392. Those are all New York decisions, the pioneer State, not only in the adoption of a code of procedure, but in the interpretation of code regulations and alterations. The doctrine that a counterclaim could not be preferred in an action of tort, was repudiated by the New York Court of Appeals in Carpenter v. Ins. Co., 93 N. Y. 553, a case that has been followed since in that State as settling the practice in favor of the allowance of counterclaims in tort actions, within the limits defined by the code. Ter Kuile v. Marsland, 31 N. Y. Supp. 5; Savage v. City of Buffalo, 63 N. Y. Supp. 941; Thomson v. Sanders, 118 N. Y. 252. This doctrine now obtains in most jurisdictions, including Missouri. Kamerick v. Castleman, 23 Mo. App. 481; Ritchie v. Hayward, 71 Mo. 560; Emery v. Railroad, 77 Mo. 339.

There are some decisions in which the right of counterclaim is denied either in replevin alone, or in tort actions generally, on the ground that a State statute expressly or impliedly forbids it. Deitrichs v. Railroad, 13 Neb. 43; Jameson v. Kenn, 43 Neb. 412; Kennett v. Fickel, 41 Kas. 211; Davis v. Frederick, 6 Mont. 301; McIntyre v. Eastman, 76 Iowa 455. The last citation declares the Iowa statute prohibits the filing of a counterclaim in a replevin suit; but this must be a late enactment; for in an earlier decision, the right of counterclaim in such cases was distinctly affirmed. Dunham v. Dennis, 9 Iowa 543.

Statutes similar to ours in respect to set-off or counterclaim have been construed, in a few instances, not to extend those procedures to replevin actions.  Gray v. Robinson, 33 Pacific 712;  Loveshon v. · Loomis, 45 Cal. 8.

In accordance with Mr. Pomeroy's text, above quoted, the weight of authority appears to favor the right to present a counterclaim or set-off in replevin under some circumstances.  There are decisions in which this right was recognized, but in which the facts required it to be enforced only so far as was necessary to defeat the plaintiff's demand; and some of the opinions expressly confine it within that limit.  Caldwell v. Pennington, 3 Gratt. 91; Rogers v. Kerr, 42 Ark. 100; Ames Iron Works v. Rea, 56 Ark. 450; Bloodworth v. Stevens, 51 Miss. 475; Lapham v. Osborne, 20 Nev. 168; Baldwin, v. Burrows, 95 Ind. 81; Holderman v. Manier, 104 Ind. 118; Babb v. Talcitt, 47 Mo. 343; Thompson v. Kessel, 30 N. Y. 383.  In each of those cases the counterclaim was upheld; but no affirmative relief was granted to the defendant, we believe, and perhaps none was prayed. In other words, the effect of the counterclaim, in the form the judgment took, was purely defensive.

In Baldwin v. Burrows, 95 Ind. supra, there is a dictum that an overpayment can not be recovered by way of counterclaim in a replevin case; but the point was not involved in the decision and the remark appears to be opposed to the reasoning in Gilpin v. Wilson, 53 Ind. 443, and in Shipman Coal Co. v. Pheiffer, 11 Ind. App. loc. cit. 450.

In Babb v. Talcott, a Missouri decision, the action was for the possession of a quantity of wheat and the defendant's retention of the wheat was upheld on the ground that he had a lien on it for warehouse charges. A reply was filed, in the nature of a recoupment, charging that some forty bushels of wheat while in the possession of the warehouseman, were lost through their negligence, causing  damage  to  the  plaintiff  in  an

amount equal to their charges. That recoupment against the defendants' lien charges in favor of the plaintiff, was approved by the Supreme Court.

In other cases counterclaims in replevin suits were not only sustained, but enforced to the extent of granting affirmative relief to the defendants by judgments in their favor for amounts above the amounts found be due to the plaintiffs. That is to say, the counterclaim in its proper sense as a seperate cause of action in favor of a defendant, and not merely as matter of defense against a plaintiff's case, was enforced in actions of replevin. Roberts v. Johannas, 41 Wis. 617; Aultmann v. McDonough, 110 Wis. 263; Defford v. Hutchinson, 11 L. R. A. (Kas.) 257; Dunham v. Dennis, 9 Iowa, supra; Mayor of N. Y. v. Steamship Co., 21 How. 291; Wilson v. Hughes, 94 N. C. 182; Minn. Threshing Co. v. Daniel, 83 N. W. 266; Cooper v. Kipp, 65 N. Y. Supp. 379. The decisions last cited are exactly in point in the present controversy, as is manifest; for here the defendant not only sought to defeat the plaintiff's action by his counterclaim, but prayed judgment for the excess he had paid over and above what he owed the plaintiff. An examination of the opinions in those cases, which we do not care to digest, will show that they uphold the proceeding by counterclaim for the purpose, not only of defeating a plaintiff's demand for the chattels in dispute, and damages for their detention, but for giving judgment for a defendant for whatever amount the proof shows he is entitled to recover from the plaintiff over and above the claim on which the latter's cause of action is based. Several of them were rendered in actions of replevin wherein the plaintiff's possessory right depended on a chattel mortgage, and the counterclaim was for damages growing out of the transaction incident to the giving of the mortgage; as where the mortgage was put on personal property for its purchase price, and the defendant asked damages because of the inefficient working of machinery, or for the

breach of some warranty in regard to the property. Aultmann v. McDonough, 110 Wis. supra; Wilson v. Hughes, 94 N. C. supra; Minn. Threshing Co. v. Daniel, 83 N. W. supra. Most of those cases are of recent date and point to a disposition in the courts to adopt a broader view than was formerly taken of the right of counterclaim in actions like this and in actions of tort generally. As opposed to the older notion on the subject expressed in Gottler v. Babcock, supra, that a set-off or counterclaim would not lie in a possessory action for personalty, we call attention to the opinion in Brown v. Buckingham, 11 Abb. Prac. 387, wherein it is said that the code, in general terms and without limitation as to the nature of the action, provides for a counterclaim provided it arises on the transaction set forth in the complaint, or is connected with the subject of the action, and that such language is sufficiently comprehensive to authorize the procedure in replevin, or other tort cases.

In view of the drift of opinion on this subject, and the very liberal construction which has been put on our statutes in reference to set-off and counterclaim with a view to settling all controversies in one action, if possible, we think those remedies lie in replevin actions as well as in others; subject, of course, to such restrictions as the nature of the proceeding, or the facts of the case may impose. This doctrine has been adverted to with approval heretofore in this State (Workman v. Warder, 28 Mo. App. 1), and will be adopted in deciding the present appeal. It leads to the conclusion that a demurrer would not lie against the defendant's counterclaim on the ground that such a remedy is inapplicable to this species of litigation, and that the plaintiff's motion to arrest the judgment can not be sustained on that ground.

The next point for investigation relates to the sufficiency of the facts stated in the answer to constitute a cause of action against the plaintiff. The statutes say that a counterclaim must exist in favor of a defend-

ant against a plaintiff, between whom a separate judgment might be had in the action. That statutory requirement is met by the facts stated in defendant's answer; for they would authorize a judgment against the plaintiff for any sum he may have overpaid on his indebtedness. Does the asserted counterclaim arise out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim, or is it connected with the subject of the action? It must fulfill one of those contingencies, as this is not a case on a contract. As is usual in the attempt to settle the meaning of statutory innovations in the law of procedure, there has been a great diversity of opinion as to what is meant by the words ''transaction'' and ''connected with the subject of the action.'' No transaction is expressly stated in the complaint, except the alleged unlawful detention of the stock by the defendant. But the answer and the replication develop all the facts of the dealings between the parties and show that the plaintiff's interest in the property sued for, grew out of a chattel mortgage which had been executed by the defendant to secure notes given for the purchase price of the wheat binder. The facts on which relief is prayed in the answer are two alleged payments on the notes. The cash payment is admitted by the replication, while the amount of the other, made by the return of the machine, is disputed. Narrowly regarded, the subject of the action may be said to be the animals described in the complaint; and on that theory it could not appropriately be held that the payments averred in the counterclaim are connected with the subject of the action. But back of the complaint with its formal averments, are the debt and the security for it, which are admitted by the plaintiff to be the foundation of its interest in and right to recover the property in suit. The subject of the action is the alleged indebtedness of the defendant to the plaintiff; as would not be doubted if the case was one in equity to enforce the notes and mortgage. And only by the most

technical and barren logic can it be said to be otherwise in this case, wherein the security is sought to be legally enforced. The overpayment pleaded by way of counterclaim is directly connected with the subject of the action, when thus regarded, and might perhaps be declared to arise out of the transaction on which the notes and mortgage were given. But we prefer to decide that the payments are connected with the subject of the action. The phrase "subject of the action," is different from "cause of action," and signifies the ultimate or primary title, right or interest which a plaintiff seeks to enforce or protect; not merely the wrong to be redressed in the particular case. According to this view, the subject of the action in this litigation is neither the animals mentioned in the complaint, nor their unlawful detention by the defendant; but plaintiff's claim against the defendant on the notes and chattel mortgage. Plaintiff's right to the stock depended entirely on whether its notes had been paid and the lien of the mortgage thereby destroyed; hence, the indebtedness was the subject of the action and its existence the fact in dispute. This interpretation of the law on the subject of counterclaim is generally taught. Bliss, Code Pleading (3 Ed.), sec. 126; Pomeroy, Code Remedies (3 Ed.), secs. 775, 793; Miller v. Hunt, 57 N. W. 315 (Idaho); Murphy v. Russell, 67 Pac. 427 (Idaho); Deford v. Hutchinson; Minn. Thresh. Co. v. Daniel, Aultmann v. McDonough; Wilson v. Hughes; Kamerick v. Castleman; Carpenter v. Ins. Co.; McAdow v. Ross, supra.

In the situation of affairs between the plaintiff and the defendant, the former could have waived the unlawful detention of the mortgaged property and have enforced its security and collected its debt by a direct suit on the contract obligations it held against the defendant; which is a point favorable to the assertion of a counterclaim sounding in contract, when the plaintiff's action sounds *in tort*. Ritchie v. Hayward, 71 Mo. 560;

Brower v. Nellis, 6 Ind. App. 323. The latter citation has an excellent opinion.

When a counterclaim is tried in a replevin controversy, it will be the duty of the court to carefully supervise the verdict and judgment with reference to compliance with our statutes, which prescribe the judgment that may be rendered against the plaintiff and his sureties when the defendant prevails. R. S. 1899, secs. 3920 *et seq.* The sureties on a replevin bond would not, of course, be liable for any damages found for a defendant on his counterclaim.

We conclude that the answer of defendant stated a good counterclaim within the meaning of the statutes, and that no difficulty in adjusting the respective rights of the parties, which would render it impracticable to deal with the counterclaim, was presented by the facts alleged. If the plaintiff had maintained its action, all their demands could have been determined by the judgment. The cash payment made by the defendant on his notes was $42, and the credit to which he was entitled for the machine was $87.50, as the jury found that was its value when the plaintiff took it back. The sum of these payments is $129.50; so that fifty cents is still due the plaintiff on the notes, exclusive of interest, if they bore interest. Plaintiff was, therefore, entitled to the possession of the property described in the mortgage. There is a balance due on the notes after deducting the $42 paid on them, for which plaintiff can get judgment in an action on the notes and off-set it against the present judgment, which was for the value of the machine only and adjudicated nothing else.

In the state of the record, the judgment of the court below must be affirmed. It is so ordered. *Bland, P. J.,* and *Reyburn, J.,* concur.