W. D. COLLINS et al., Appellants v. JOHN PFINGSTEN LEATHER COMPANY, Respondent.

St. Louis Court of Appeals, December 30, 1916.

1. **COUNTERCLAIMS:** ''Set-off:'' ''Recoupment.'' The terms "set-off" and "recoupment" are included in the term "counterclaim;" the difference in the two being important only by reason of the fact that the former must arise from contract and can be used only in an action founded upon a contract, while the latter may spring from a wrong, provided it arose out of the transaction set forth by the claimant or is connected with the subject of the action.

Collins v. Leather Co.

2. **REPLEVIN: Counterclaims.** A counterclaim may be interposed in an action of replevin, where it is founded upon a cause of action arising out of the contract or transaction set forth in the petition as the foundation of plaintiffs claim, or where it is connected with the subject of the action.

3. ———: ———: **Liens.** In an action to replevy hides tanned into leather by defendant for plaintiff, under a contract, where defendant sought to justify the detention on the ground it had a lien on the hides for compensation due for the tanning, it was proper for plaintiff, in his reply, not only to dispute the claimed indebtedness, but also to set up a counterclaim for a larger amount owing by defendant on indebtedness growing out of the contract on which the lien claim is founded, by way of set-off or recoupment, for the purpose of defeating the lien; and the rejection of evidence tending to establish such counterclaim was reversible error.

4. **LIENS: Excessive Demand: Waiver of Lien.** The mere demand of an excessive sum by a creditor holding a lien on chattels for work performed is not a waiver of the lien for the sum really due; the artisan losing his lien only where he so mixes his accounts that his claim against the given property cannot be distinguished from other accounts.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillan,* Judge.

REVERSED AND REMANDED.

*Frank H. Sullivan* and *Charles E. Morrow* for appellants.

(1) Counterclaims connected with the subject of the action are permissible in replevin suits. McCormick Harvester Co. v. Hill, 104 Mo. App. 544; Ely v. Sutton, 177 Mo. App. 546, 556. (2) Damages arising in connection with the subject-matter may be set off in a replevin suit against the debt claimed by the defendant as a lien upon the property replevined. Close v. Hurst, 151 Mo. App. 75. (3) If the plaintiffs had advanced money to the defendant, or there was due the plaintiffs interest on moneys so advanced, and for investments in hides under the contract in question, which equalled or exceeded the amount of the indebtedness claimed by the defendant, then the plaintiffs were not indebted to the defendant at the time of the institution of this suit, and defendant had no lien upon the hides in question, and the court erred in excluding plaintiffs' evidence to so show. Close v. Hurst, 151 Mo. App. 75, 79. (4) The court erred in

refusing to permit the plaintiffs to show that the defendant had damaged and retained and converted to its own use other hides received by it to be tanned under the contract in question, and that the plaintiffs were damaged thereby in a sum greater than the amount claimed by the defendant. Close v. Hurst, 151 Mo. App. 75; Crane v. Murray, 106 Mo. App. 697; Gordon v. Bruner, 49 Mo. 570; Mathes v. Lumber Company, 173 Mo. App. 239. (5) The defendant in no event had a lien upon the hides in question in this suit for services rendered in tanning other hides unless there was a custom or a special agreement to the contrary, and no such custom or agreement was shown in this case. Therefore, the claim of $1666.68 made by the defendant upon the plaintiffs before the hides in question could be delivered to the plaintiffs, when under the contract it is admitted that the defendant is only entitled to $999.26, was excessive under any view, and the defendant thereby lost its lien. Kirtley v. Morris, 43 Mo. App. 144, 151. (a) In any event, if the demand for $1666.68, made by the defendant, was not made in good faith, and amounted to an announcement that it was useless for the plaintiff to tender a smaller sum, it dispensed with any tender and was a waiver of the lien, and the court erred in refusing the plaintiffs' instruction No. 1. 25 Cyc. 677. (b) Admittedly the defendant joined a non-lien demand, if it had any demand against the plaintiffs, with its alleged lien demand of $999.26 for tanning the particular hides in question, and thereby it lost its lien. 25 Cyc. 677; Bicknell v. Trickey, 34 Me. 273. (c) The defendant, in this case, if it had a demand in excess of $999.26, the largest amount to which it was entitled for tanning the hides in question, mingled its accounts and demanded of the plaintiff the sum of $1666.68, before the leather would be delivered to the plaintiffs, and thereby lost its lien. Kirtley v. Norris, 43 Mo. App. 144, 151. (6) The court erred in permitting the defendant to introduce the testimony of the witness Walter, that the tanning of the hides in question cost it six cents per square foot. The defendant had agreed to tan the leather in question for

a certain price, and it was not only immaterial but prejudicial error to permit the defendant to show that the tanning of the hides in question actually cost it more than the contract price. The court also erred in refusing plaintiffs' refused instruction No. 5, which stated to the jury that if they believed from the evidence that the defendant had agreed to treat and tan the leather in question in a good and workmanlike manner, and render the same into salable leather for four cents per foot for side leather, and one and one-half cents per foot for split leather, then it was the duty of the defendant to so tan said hides, regardless of the cost to defendant.

*Arthur N. Sager* and *Chas. T. Abeles* for respondent.

(1) Replevin is in form an action *ex delicto* for the specific reparation of a tort. It is no justification for a tortious act that the tort-feasee is indebted to the tort-feasor. Waterman on Set-off (2 Ed.), sec. 144, p. 169. (2) If a claim does not arise out of the contract or cause of action set forth in the petition as the basis of the plaintiff's claim, or is not connected with the subject matter, it cannot be used as a set-off in a replevin suit. The plaintiffs' offers of evidence of advances made to the defendant, and of all claims arising in connection with other shipments of hides, were properly refused in the absence of proof that the advances were made in payment of work done on the hides in question, and that the shipments were all made in pursuance of a single contract. McCormick Harvesting Co. v. Hill, 104 Mo. App. 546, 558. (3) The right of set-off is a purely statutory one and its exercise is dependent upon the mutuality of the debts attempted to be set-off. A demand of damages for a tort is not a debt and is not embraced in the statute of set-off. Hence, the plaintiffs' offer of evidence to prove that the defendant had damaged and retained and converted to its own use other hides received by it, was properly refused. State to use, v. Modrell, 15 Mo. 421; Caldwell v. Ryan, 210 Mo. 17, 25. (4) A general claim cannot be set-off against a special one which is funda-

mentally a property right.   Haseltine v. Thrasher, 65 Mo. App. 334, 342.   (5)   The claim by a lien holder of a sum in excess of that due him, does not of itself waive the lien.   Monteith v. Great Western Printing Co., 16 Mo. App. 450,453; Kirtley v. Morris, 43 Mo. App. 144, 151; 25 Cyc. 677.   (a)   There should be no distinction between the legal consequences of an excessive claim and the joining of a lien and a non-lien demand.   Consequently, in whichever light the defendant's action is viewed, the lien is not lost.   Scarfe v. Morgan, 4 Mee & W. 270. (b)   The defendant's accounts were not so mingled as to make it impossible to distinguish the claim against the property in question.   Kirtley v. Morris, 43 Mo. App. 144, l. c. 151   (6)   Even though the evidence tending to show that the tanning of the hides in question actually cost the defendant more than the contract price was immaterial, the admission of this evidence was in no way prejudicial to the plaintiff, for the court charged the jury (Instruction No. 3, given by the court of its own motion) that the law required the defendant to tan the hides in the manner and for the prices specified by the agreement.   The material points of the plaintiffs' refused instruction No. 5, which stated to the jury that if they believed from the evidence that the defendant had agreed to treat and tan the leather in question in a good and workmanlike manner and render the same into salable leather for four cents per foot for side leather, and one and one-half cents per foot for split leather, then it was the duty of the defendant to so tan said hides, regardless of the cost to the defendant, were incorporated in the third instruction given by the court of its own motion, and this refusal was not, therefore, reversible error.

THOMPSON, J.—This is a suit in replevin for one hundred and forty-two bales of leather.   The petition was filed in the circuit court, city of St. Louis, on the 7th day of February, 1913, and is in the usual form, accompanied by an  affidavit that the property was wrongfully detained and that its actual value was $4000, and that the plaintiffs would be in danger of losing said

property unless it be taken from the possession of the defendant or otherwise secured. The order of delivery was duly made by the court and thereafter the plaintiffs gave the sheriff a bond in the sum of $8000, and the sheriff thereupon took the property and delivered it to plaintiffs.

The suit was originally against John Pfingsten Leather Company, Chicago & Alton Railroad Company and Columbia Transfer Company, but the Railroad Company and the Transfer Company simply had all the leather in question as carriers, and by stipulation of all of the parties the cause was dismissed as to those two defendants. The real issues were raised by the answer of the defendant, John Pfingsten Leather Company and the reply of the plaintiffs thereto.

The answer of the defendant, John Pfingsten Leather Company, alleged that it was a corporation and that the plaintiffs were co-partners and alleged that on or about the 15th day of August, 1912, it entered into a verbal contract with the plaintiffs to treat and tan at its tannery in Milwaukee, Wisconsin, certain hides to be furnished by plaintiffs at a price of four cents per square foot, and that pursuant to that contract plaintiffs furnished and delivered to the defendant certain hides which were treated and tanned by it and converted into leather, and that after this was done and they were finished and ready for shipment, the leather was bundled into convenient form for shipment, and aggregated one hundred and forty-two bundles and contained about twenty-four thousand nine hundred eighty-one and one-half square feet of leather; that, on or about the 29th day of January, 1913, these bundles of leather were delivered to the Goodrich Transit Company, a common carrier, consigned and billed to the order of itself at St. Louis, Missouri, notify the plaintiffs, and that when the said leather so billed arrived in St. Louis and was in possession of the Chicago & Alton Railroad Company it was seized by the sheriff under writ of replevin and given into the possession of the plaintiffs. Defendant further alleged in its answer that the plaintiffs were not

entitled to the possession of the leather for the reason
that it had a lien on the leather, under the law, for work
and labor which it had done in converting said hides into
leather, which lien, at the agreed price of four cents per
square foot, amounted to the sum of $999.26, and that
the defendant had the right of possession of said leather
to satisfy its claim for that amount, therefore defendant
prayed judgment against the plaintiffs for the possession
of the one hundred and forty-two bundles of leather and
for damages in the sum of $500, or in the event the
plaintiffs were unable to restore the leather, judgment
was asked against the plaintiffs and each of them in the
sum of $999.26, with interest and $500 for damages.

To this answer the plaintiffs filed a reply, in which
they admitted that the defendant was a corporation do-
ing business in Milwaukee, Wisconsin, and that they had
furnished the hides from which the one hundred and
forty-two bundles of leather were made, involved in this
case, and admitted that on or about the 29th day of
January, 1913, the defendant had shipped the one hun-
dred and forty-two bundles of leather from Milwaukee to
St. Louis, consigned to the order of itself, notify
plaintiffs, and admitted that they had taken possession
of the leather under a writ of replevin. Plaintiffs further
replying stated that, on or about the 22nd day of August,
plaintiffs and defendant entered into an oral contract
whereby the defendant agreed to treat and tan hides
which were to be bought and furnished by the plaintiffs,
at a price of four cents per square foot for grain leather
and one and one-half cents per square foot for split
leather, and that by the terms of said oral agreement
the defendant was to pay interest to the plaintiffs at the
rate of six per cent. per annum on the money invested
by the plaintiffs in the hides purchased and shipped to
defendant for tanning under said contract, and also in-
terest at six per cent. per annum upon any sums of
money advanced to defendant by plaintiffs for any rea-
son whatsoever in connection with said contract, and
that defendant agreed to tan all hides in a good and
workmanlike manner. For further reply, the plaintiffs

stated that after the making of said oral contract, and pursuant thereto, the plaintiff delivered to the defendant at Milwaukee, Wisconsin, certain hides, and also purchased and held certain hides under the contract for defendant to be treated by it under said contract, among which were the leather and hides in question in this suit, being one hundred and forty-two bundles. The plaintiffs denied that the said hides were duly and properly tanned and converted into leather, and denied that the reasonable value for so treating and tanning these one hundred and forty-two bundles was four cents per square foot, or any other sum, and alleged that in the tanning of these one hundred and forty-two bundles of hides in question, the defendant so treated them that they became damaged and depreciated in value to the extent of $1998.48, and that therefore the plaintiffs were not indebted to the defendant in the sum claimed in the answer, or any other amount, and that therefore defendant had no lien upon the one hundred and forty-two bundles of leather involved in this controversy. Plaintiffs replying further stated that at the agreed price of four cents per square foot, the defendant would only have a claim for services rendered in tanning said hides, amounting to $999.26, and that at the time the said hides in suit were shipped bill of lading was attached to secure $1666.68 and this was an exorbitant and unreasonable amount and included an unjust and non-lien demand which was grossly excessive, and because of this fact defendant had no lien upon the one hundred and forty-two bundles of leather involved in this case. Further replying the plaintiffs stated that after entering into this oral contract they from time to time advanced money to the defendant on said contract, which was unpaid at the time this suit was instituted, and which amounted to $752.54, and further alleged that plaintiffs had invested in hides to be furnished under said contract, the interest on which at the rate of six per cent. per annum, in accordance with the terms of the contract, amounted to $2126.86, and this, together with the amount advanced, aggregated $2879.40, which was due and owing under said contract from the

defendant to the plaintiffs at the time of the institution
of the suit, and that therefore, even if the defendant
had a claim for services rendered in tanning the hides
amounting to $999.26, it should be deducted from the a-
mount due from defendant to plaintiffs under the con-
tract, and that defendant, therefore, could not have a
lien upon the one hundred forty-two bundles of leather.
Further replying plaintiffs alleged that it had deliver-
ed to defendant under said contract certain half hides
to the number of one thousand fifteen, and of the value
of $279.12, which defendant received but neglected to
tan, and converted the same to its own use, thereby
rendering defendant further indebted to plaintiffs. Fur-
ther replying the plaintiff alleged that it delivered to
defendant certain hides to be treated under said con-
tract to the value of $2618.78, and that defendant failed
to treat said hides in a workmanlike manner, but on the
contrary in the process of tanning they entirely ruined
them and rendered them worthless, and that because of
that fact the defendant was indebted to the plaintiffs
in the sum of $2618.78 for said hides so ruined, and
that because of that fact defendant had no lien or charge
against the hides involved in this case.

The evidence tended to show that the defendant
was operating a tannery in Milwaukee, Wisconsin, and
that in August, 1912, Mr. Collins, one of the plaintiffs,
made an arrangement with the defendant to tan hides
for the plaintiffs. The contract was oral. By the terms
of this contract it was orally agreed between the plain-
tiffs and defendant that the plaintiffs should furnish cer-
tain hides to the defendant to be tanned, and the plain-
tiffs were to pay the defendant four cents per square
foot for tanning the grain leather and one and one-half
cents per square foot for tanning split leather. The
president of the defendant company indicated that from
time to time he would have to have money advanced to
him by the plaintiff to carry on the work of tanning the
hides under the contract. Plaintiffs agreed to advance
said moneys from time to time, and the evidence shows
that some advances were in fact made. Under the terms

of the agreement the defendant was to pay the plaintiffs six per cent. interest on said sums so advanced, and also was to pay the plaintiffs six per cent. interest on the moneys invested by the plaintiffs in said hides which were to be tanned by defendant under said contract, and it was further agreed that after the tanning had been done and the leather was sold, the defendant was to allow plaintiffs five per cent. for selling the leather, and then the profits which accrued upon the selling of the leather, if any, were to be divided equally between plaintiffs and defendant. It was further understood that the leather was to be tanned by defendant in a workmanlike manner. There was no substantial dispute between the parties on the terms of the above agreement. Under these arrangements the plaintiffs bought and shipped to defendant at Milwaukee, for tanning, certain hides, among others and hides from which the one hundred and forty-two bundles of leather involved in this suit were made.

The plaintiffs offered evidence to substantiate the various allegations set forth in its reply: First, to the effect that the hides from which the one hundred and forty-two bundles of leather involved in this case were made were not properly tanned, resulting in the leather depreciating $1998.48; second, that defendant was indebted to it under the contract for money advanced and interest on the money invested amounting to $2879.40; third, that defendant had converted certain hides to its own use amounting to $279.12; and fourth, that defendant had damaged other hides furnished under the contract in the process of tanning rendering them worthless, which were of the reasonable value of $2618.78.

All of this evidence was objected to and the objection was sustained by the court, except the evidence to the effect that the defendant had treated the hides, from which the one hundred and forty-two bundles of leather involved in this case were made, in an unworkmanlike manner. The court allowed evidence offered on the part of the plaintiffs, tending to establish this fact, to be admitted.

The defendant contended that the condition of the leather of the one hundred and forty-two bundles involved in this case was not on account of the tanning, but on account of the condition of the hides, in that they were poor and it was impossible to make good leather out of them and defendant's evidence tended to show this. On instructions covering this point alone, the case went to the jury. The jury found a verdict in favor of the defendant. Plaintiffs filed a motion for a new trial, and upon it being overruled, appealed.

As indicated before, the trial court ruled that the plaintiffs could only show the damage to the hides in question, if any, and whether or not plaintiffs had paid the defendant for tanning the particular hides in question, and ruled that the plaintiffs could not show that the defendant at the time the suit was instituted was indebted to the plaintiffs for sums of money advanced under the contract amounting to $752.54 and interest on the amount invested, amounting to $2126.86, or that defendant was indebted to it to the extent of $279.12 for the split or half-hides alleged by plaintiffs to have been converted to defendant's own use, or that defendant was indebted to plaintiffs in the amount of $2618.78 by reason of having improperly tanned, spoiled and rendered worthless certain other hides delivered by plaintiffs to defendant to be tanned under the contract, and refused to permit the plaintiffs to show the state of the account between the plaintiffs and defendant under the contract, and in effect ruled that even though defendant was indebted to plaintiffs, it had a right to hold the hides in question until plaintiffs paid defendant for tanning the same and that plaintiffs could not show by way of set-off or recoupment or otherwise, any other demand or claim growing out of the contract against defendant's claim. To the exclusion of this evidence by the learned trial court the plaintiffs excepted at the time and now assigns error for the same in this court.

It is held that under our Code the terms "set-off" and "recoupment" are included within the term "coun-
t... . in .. .... 'b- 'li-t'·ction between set-off and recoup-

ment is now important only from the fact that the former must arise from contract and can only be used in an action founded upon contract, while the latter may spring from a wrong, provided it arose out of a transaction set forth by the claimant or connected with the subject of the action. [Gordon v. Bruner, 49 Mo. 570.] The rule of the earlier cases was that a set-off or recoupment was not allowable in an action of replevin except where equitable relief might be demanded under exceptional circumstances. [Mackey v. Dillinger, 73 Pa. State 85; Phillips v. Monges, 4 Whart (Pa.) 226; Warner v. Caulk, 3 Whart (Pa.) 193; Peterson v. Haight, 3 Whart (Pa.) 150; Patch Manufacturing Company v. Killinger, 26 Pa. Co. Ct. 539.] This was on the theory that the action of replevin sounded in tort for the wrongful detention of personal property and that set-off, recoupment or counterclaim, whatever might be its nature, could not be pleaded in an action of replevin, for it reasoned it is no justification for a tortious act that the tore-feasee is indebted to the tort-feasor, and in some jurisdictions the filing of a counterclaim or set-off in a replevin suit is expressly prohibited by statute. [Sylvester v. Ammons, 126 Ia. 140.] Since the adoption of the Code in most of the States, the doctrine of set-off and counterclaim has undergone much change. At first, counterclaims were held not to be available in any action for a tort and, therefore, not in replevin, which sounds in tort. [Gottler v. Babcock, 7 Abb. (N. Y.) 392.] But this rule has been so far modified as to allow the interposition of a counterclaim in the full sense of the Code, whether arising on contract or based upon a tort, in an action of replevin, whenever such counterclaim or setoff is founded upon a cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or whenever it is connected with the subject of the action. [Reardon v. Higgins, 39 Ind. App. 363; Deford v. Hutchinson, 45 Kansas 318; Thompson v. Kessel, 30 N. Y. 383; Wilson v. Hughes, 94 N. C. 182; Clement v. Field, 147 U. S. 467.] In this jurisdiction the following cases are to to the same effect: McCormick

Harvesting Machine Company v. Hill, 104 Mo. App. 544, 79 S. W. 745; Close v. Hurst, 151 Mo. App. 75, 131 S. W. 751; Ely v. Sutton, 177 Mo. App. 546, 162 S. W. 755; Babb v. Talcott, 47 Mo. 343. There are decisions in which the right of counterclaim is recognized, but in which the facts required it to be enforced only so far as necessary to defeat the plaintiff's demand, and some of the decisions expressly confined it within that limit, and deny the right to obtain affirmatve relief on the counterclaim. [Johnson v. St. Louis Butchers Supply Company, 60 Ark. 387, 31 S. W. 429; Ames Iron Works v. Rea, 56 Ark. 450, 19 S. W. 1063.] In other words, in these decisions the effect of the counterclaim is purely defensive and no judgment is rendered on the counterclaim. In other decisions counterclaims in replevin suits are not only sustained, but enforced to the extent of granting affirmative relief to defendants by judgment in their favor for amount above the amount found to be due the plaintiff. That is to say, the counterclaim is enforced in its proper sense, as a separate cause of action in favor of a defendant, and not merely as a matter of defense against a plaintiff's case. [McCormick Harvesting Machine Company v. Hill, 104 Mo. App. 544, 79 S. W. 745, and cases therein cited.]

The McCormick Harvesting Machine Company case, supra, is the leading case in this State upon the matters involved herein. This was a case where the plaintiff brought replevin for the possession of certain horses and cattle covered by a chattel mortgage, given by the defendant to plaintiff. The defendant had purchased from the plaintiff a wheat binder and gave promissory notes, secured by a chattel mortgage on the horses and cattle in question. The defendant in this action filed a counterclaim, averring that he had purchased of plaintiff a wheat binder and had executed his promissory notes therefor, secured by a chattel mortgage on the horses and cattle in question. The defendant paid plaintiff $42 on the notes, which were secured by the chattel mortgage, and defendant further alleged that the plaintiff, without legal process, had taken possession of the

binder, of the value of $125, for the purpose of applying it on said indebtedness, and that defendant had overpaid the plaintiff. On trial, the defendant recovered a judgment against the plaintiff for the sum of $87.50. This judgment, the court held, under the evidence, was excessive, because it was found by the jury that the value of the machine, taken from defendant in payment of the notes, only amounted to $87.50, and that defendant had paid on the notes, secured by the chattel mortgage, the sum of $42 in cash, making a credit on the said notes of $129.50, which would still leave the notes unpaid, but the court distinctly held that the defendant had the right to plead the counterclaim and would have been entitled to judgment in its favor and against the defendant if the evidence had shown, as defendant contended, that the aggregate amount of cash paid on the notes, secured by the mortgage, and the value of the machine turned over by defendant to plaintiff, had amounted to more than the notes secured by the chattel mortgage. In this case Judge Goode, held that the "subject of the action" was neither the animals mentioned in the complaint, nor their unlawful detention, but was the debt and the chattel mortgage, and the plaintiff's right to the property depended on whether or not the notes had been paid and the lien of the mortgage thereby destroyed, the indebtedness being the subject of the action and its existence the fact in dispute.

In this case the plaintiffs by their reply disputed the indebtedness claimed by the defendant for which it had a lien upon the leather. The plaintiffs claimed that even though the defendant had properly tanned the hides in question and under the contract of four cents per square foot had a claim against the plaintiffs amounting to $999.26, yet plaintiffs had a claim by way of off-set or recoupment against defendant growing out of the very contract which was the foundation of defendant's lien, amounting to more than the amount of the lien claimed by defendant. We are of the opinion that such matters may be said to constitute a cause of action which arises out of the contract which is the foundation of the de-

fendant's lien as set forth by it in its answer in this case, and just as it would be a defense even to the extent of affirmative relief if the defendant were suing for the amount it claims, so it is available here as an off-set to the amount claimed by defendant to be due him under the contract and for which he has a lien on the leather. Or, again, it might be said, as was said by Judge GOODE in the McCormick Harvesting Machine Company case, supra, that the subject of the defendant's claim is the indebtedness claimed to be due from plaintiffs to the extent of $999.26. If plaintiffs did not owe this amount, or any other amount to defendant for work and labor done and material furnished upon the hides in question, then defendant, under the facts of the case, had no right to retain them in their possession, and as we understand it, plaintiffs offered to show that very thing.

In 34 Cyc. page 1418, in speaking of this subject it is said:

"If a counterclaim may be set up in a reply, it can be only to defeat a recovery on a counterclaim in the answer, and not for any affirmative judgment on it."

And it is held in the case of Townsend v. Minneapolis Cold Storage Company, 46 Minnesota 121, that where in an action of replevin defendant justifies the detention upon a lien claimed for storing the property, the plaintiff may, in order to defeat the claim of lien, allege and prove damages sustained by him to the property stored, to as much as or more than the amount claimed to be due for storage.

In the case of Babb v. Talcott, 47 Mo. 343, the action was for the possession of a quantity of wheat and the defendant's retention of the wheat was maintained on the ground that he had a lien on it for warehouse charges. A reply was filed in the nature of a recoupment charging that some forty bushels of wheat while in possession of the warehouse were lost through their negligence, causing damage to the plaintiff in an amount equal to their charge. That recoupment against the defendant's lien in favor of the plaintiff was approved by the Supreme Court.

196 Mo. App.—40

The case of Brown v. Buckingham, 11 Abb. Prac. 387, was a suit to recover the possession of three hundred and twenty-five pounds of silk which was delivered to the defendant for the special purpose of being manufactured into sewing silk and which had been so manufactured, and which silk the defendant illegally detained after demand. The defendant by answer denied the plaintiff's alleged right to the possession of the silk, claiming to have a lien thereon for some $500, and claimed also by counterclaim that some time previous he had sold and delivered to plaintiff certain silk for which there remained due to him the sum of $400, and averred that such sale and delivery arose out of the contract and transaction set forth in the complaint as the foundation of the plaintiff's claim and was connected with the subject of the action. The plaintiff demurred to the answer and counterclaim. The demurrer was sustained, but the court held that if the answer had sufficiently and fully stated that the silk sold by defendant to plaintiff had been sold and delivered under any contract which included or applied the silk demanded by the plaintiff, or had set forth any facts connecting in any way the transaction stated in the complaint with the supposed cause of action stated in the answer, in that event it would have been available to defendant and the answer would have been good.

We believe, therefore, that the evidence offered by the plaintiffs to support the allegations in the reply tending to show that the plaintiffs were not indebted to the defendant for work and labor done on the hides in question under the contract set forth in the answer and reply was improperly excluded.

When the leather involved in this case was originally shipped from Milwaukee, Wisconsin, the defendant claimed that the plaintiffs were indebted to it for work and labor done under this contract, and for which it had a lien on the hides to the extent of $1666.68. At the trial the defendant admitted by its answer that the indebtedness amounted to only $999.26, and plaintiffs maintain that since the defendant claimed a greater amount than

was due, it thereby waived its lien, if it ever had one, and that the judgment should be reversed.

In 25 Cyc., 677, it is said:

"The mere demand of an excessive sum by a creditor holding a lien does not dispense with a tender nor waive his lien for the sum really due."

In Kirtley v. Morris, 43 Mo. App. l. c. 151, it is said:

"Nor ought the fact that he claimed there was more owing him than he afterwards claimed. [Everett v. Coffin, 6 Wend. 603; Comstock v. McCracker, 53 Mich. 123] Though, there is authority contrary to the latter proposition, I am inclined to the opinion that claiming a lien for too much is not a waiver of the rightful lien. If the artisan claims more than his legal right, the demandant should tender him the sum for which he has a rightful lien."

And it seems that it is only in those cases where an artisan so mixes his accounts that his claim against the given property cannot be distinguished from other accounts that he loses his lien. [Kirtley v. Morris, 43 Mo. App. 144.]

It follows from what has been said that the judgment of the lower court should be reversed and the cause remanded, and it is so ordered. *Reynolds P. J.,* and *Allen, J.,* concur.